OBERDIER RESSMEYER LLP
Carl W. Oberdier
Kellen G. Ressmeyer
655 Third Avenue; 28th Floor
New York, New York  10017
Telephone:  (212) 659-5141

*Attorneys for WB Family LLC and Henry L. Mann*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 15 |
| | ) |
| CHINA MEDICAL TECHNOLOGIES, INC. | ) Case No. 12-13736 (REG) |
| | ) |
| Debtor in a Foreign Proceeding. | ) |
| | ) |

## NOTICE OF APPEAL OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO APPEAL

WB Family LLC ("WB Family") and Henry L. Mann ("Mann"), pursuant to 28 U.S.C. § 158(a)(1) and Rule 8001 of the Federal Rules of Bankruptcy Procedure, hereby appeal to the United States District Court for the Southern District of New York from all aspects of the Order Denying Renewed Motion Of WB Family LLC And Henry L. Mann For An Order Confirming That The Automatic Stay Does Not Apply Or, In The Alternative, Granting Stay Relief, including the Findings of Fact and Conclusions of Law incorporated by reference therein (Docket No. 119), which was entered in the above-captioned Chapter 15 proceeding on July 11, 2013 (Docket No. 122) (the "Order").  A true and correct copy of the Order is attached hereto as Exhibit A.

The names of all parties to the Order appealed from and the names, addresses, and telephone numbers of their respective counsel are as follows:

## I.     <u>APPELLANTS AND COUNSEL</u>

A.     <u>Appellants</u>:

WB Family LLC and Henry L. Mann

B.     <u>Counsel to the Appellants</u>:

Oberdier Ressmeyer LLP
655 3rd Avenue, 28th Floor
New York, New York 10017
Tel:  (212) 659-5141
Fax: (646) 349-4925
Attn: Carl W. Oberdier, Esq.
        Kellen G. Ressmeyer, Esq.

*Attorneys for WB Family LLC and Henry L. Mann*

## II.    <u>APPELLEE AND COUNSEL</u>

A.     <u>Appellee</u>:

Foreign Representative Kenneth M. Krys
 c/o Krys Global

B.     <u>Counsel to the Appellee</u>:

Klestadt & Winters LLP
570 Seventh Avenue, 17th Floor
New York, New York 10018
Tel:  (212) 972-3000
Fax: (212) 972-2245
Attn: Tracy L. Klestadt, Esq.
        John E. Jureller, Jr., Esq.
        Joseph Corneau, Esq.
        Lauren C. Kiss, Esq.

*Attorneys for the Foreign Representative*

## MOTION FOR LEAVE TO APPEAL, FILED SUBJECT TO, AND IN THE ALTERNATIVE TO, NOTICE OF APPEAL

In the alternative, WB Family LLC and Henry L. Mann ("Appellants") incorporate their Notice of Appeal and file this Motion for Leave to Appeal (the "Motion") pursuant to 28 U.S.C. §§ 158(a)(1) and 158(a)(3), and Federal Rules of Bankruptcy Procedure 8001 and 8003, seeking leave to appeal from the Order.  Appellants submit the attached Memorandum of Law in support of this Motion**.**

Dated: July 25, 2013
      New York, New York

OBERDIER RESSMEYER LLP

By:   __/s/ Carl W. Oberdier__
      Carl W. Oberdier
      Kellen G. Ressmeyer
655 Third Avenue
28th Floor
New York, New York 10017
Tel:  (212) 659-5141
Fax:  (646) 349-4925

*Attorneys for Appellants WB Family LLC
and Henry L. Mann*

3

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In re                                                 :        Chapter 15
                                                      :
CHINA MEDICAL TECHNOLOGIES, INC.                      :
                                                      :        Case No. 12-13736 (REG)
        Debtor in a Foreign Proceeding.               :
                                                      :
                                                      :
-------------------------------------------------------------X

### ORDER DENYING RENEWED MOTION OF WB FAMILY LLC AND HENRY L. MANN FOR AN ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY OR, IN THE ALTERNATIVE, GRANTING STAY RELIEF

Upon consideration of the Renewed Motion of WB Family LLC and Henry L. Mann (collectively, the "**Movants**") for an Order Confirming that the Automatic Stay Does Not Apply, or in the Alternative, Granting Stay Relief (the "**Renewed Motion**") dated June 16, 2013, the response of the Foreign Representative to the Renewed Motion (the "**Response**") dated June 25, 2013, and the reply of the Movants in support of their Motion (the "**Reply**") dated June 27, 2013; and the Court having jurisdiction over the Renewed Motion in accordance with 28 U.S.C. §§ 157 and 1334; and a hearing on the Motion having been held on July 3, 2013 (the "**Hearing**"); and for the reasons set forth on the record at the Hearing; it is hereby

ORDERED, that the Renewed Motion, insofar as it requested a determination that the automatic stay does not apply to the State Court Actions[1] is denied; and it is further

ORDERED, that the Renewed Motion, insofar as it requested relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code is denied without prejudice; and it is further

ORDERED, that the Movants may move again for relief from the automatic stay no sooner than 120 days after the Hearing; and it is further

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Renewed Motion.

ORDERED, that the Renewed Motion, inasmuch as it requested entry of a final, appealable order is denied; and it is further

ORDERED, that this Court retains jurisdiction to resolve any disputes arising under this Order and to interpret, implement and enforce the provisions of this Order.

Dated: July _11_, 2013
New York, New York

_s/ Robert E. Gerber_
UNITED STATES BANKRUPTCY JUDGE

OBERDIER RESSMEYER LLP
Carl W. Oberdier
Kellen G. Ressmeyer
655 Third Avenue; 28th Floor
New York, New York  10017
Telephone:  (212) 659-5141

*Attorneys for WB Family LLC and Henry L. Mann*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

| | |
|---|---|
| In re: | ) |
| | ) Chapter 15 |
| CHINA MEDICAL TECHNOLOGIES, INC. | ) |
| | ) Case No. 12-13736 (REG) |
| Debtor in a Foreign Proceeding. | ) |
| | ) |

———————————————————————

**WB FAMILY LLC'S AND HENRY L. MANN'S MEMORANDUM OF LAW IN**
**<u>SUPPORT OF MOTION IN THE ALTERNATIVE FOR LEAVE TO APPEAL</u>**

## Table of Contents

Preliminary Statement ........................................................................................................ 1

Factual And Procedural Background ................................................................................... 5

    The Chapter 15 Proceeding In The Bankruptcy Court........................................ 5

    The Stayed State Court Lawsuits ........................................................................ 6

    The Foreign Representative's Improper Collusion
    With The Hedge Funds ........................................................................................ 7

    The Foreign Representative's Rule 2004 Discovery
    In The Chapter 15 Proceeding ............................................................................ 8

    The Hedge Funds' Assignment Of Their Claims To The
    Joint Liquidators, And Stroock's Withdrawal ................................................... 10

    The Foreign Representative's Unavailing Investigation.................................... 10

    The State Court Defendants Move For Confirmation That
    The Automatic Stay Does Not Apply Or, Alternatively, For Stay Relief......................... 11

    The State Court Defendants Renew Their Motion............................................. 13

The Bankruptcy Court's Decision And Order .................................................................. 14

Questions Presented And Relief Sought .......................................................................... 14

Reasons Why The Appeal Should Be Granted ................................................................ 15

    I.      The Order Is A Final Order Appealable As Of Right ........................... 16

           A.      Orders Applying The Automatic Stay And Denying
                  Stay Relief Are Generally Final ................................................ 16

           B.      The Bankruptcy Court Dispositively Rejected
                  Appellants' Legal Arguments .................................................... 17

           C.      Absent Immediate Appeal, The Relief Sought By
                  Appellants Will Be Rendered Moot ........................................... 18

    II.    In The Alternative, The Order Is An Appealable Interlocutory Order................ 19

           A.      The Bankruptcy Court's Order Presents A Controlling
                  Question Of Law ........................................................................ 20

1.     The Applicability Of The Automatic Stay To
The State Court Actions Is A Pure Question Of Law ..................20

     a.     The Automatic Stay Simply Does  Not Apply To Actions
By The Debtor..................................................................20

     b.     Section 362(A)(3) Cannot Apply, Because The
 Fraudulent Transfer Claims In The State  Court
Actions Are Not "Property" Of The Debtor ...................21

     c.     The Foreign Representative's Rule 2004
Discovery For Use In The State Court  Actions
Violates The Pending Proceeding Rule............................22

     d.     The "Prejudice" To The Foreign Representative On
Which The Court's Order Was Based Is Not
Legally Cognizable ..........................................................23

2.     The Applicability Of The Automatic Stay  To The
State Court Actions Is Controlling .................................................24

B.     The Bankruptcy Court's Order Presents  Substantial
Grounds For Difference Of Opinion .........................................................24

C.     Review Of The Bankruptcy Court's Order Will  Materially
Advance The Ultimate Termination Of This Dispute...............................25

Conclusion ...........................................................................................................25

## Table of Authorities

**Cases**

*Adelphia Recovery Trust v. Bank of America, N.A.*, 2007 WL 2585065
    (S.D.N.Y. Sept. 5, 2007)................................................................................19

*Aetna Life Ins. Co. v. Leimer, (In re Leimer)*, 724 F.2d 744 (8th Cir. 1984)................................18

*Banc of America Comm. Financial Corp. v. CGE Shattuck, LLC
    (In re CGE Shattuck, LLC)*, 225 B.R. 334 (B.A.P. 1st Cir. 2000)............................................18

*Bleeker St. Owners, et al. v. 160 Bleeker Assoc., et al.*, 93-cv-01033 (PNL)
    (S.D.N.Y.) (filed Feb. 23, 1993)................................................................................14

*Boles v. Merck & Co. (In re Fosamax Prods. Liab. Litig.)*, No. 06-1789 (JFK),
    2011 WL 2566074 (S.D.N.Y. June 29, 2011) ...........................................................20, 25

*Enron Corp v. Springfield Assocs., LLC (In re Enron Corp.)*, M-47,
    2006 WL 2548592 (S.D.N.Y Sept. 5, 2006) ............................................................20

*GLG Partners LP v. Wu Xiaodong*,
    Case No. 30-2012-00583610 ................................................................................7

*GLG Partners LP, et al. v. Mann, et al.*,
    Index No. 155696/2012 ......................................................................................7

*In re AroChem Corp.*, 176 F.3d 610 (2d Cir.1999) .................................................................15

*In re Bally Total Fitness of Greater New York, Inc.*, 1:09-cv-04250 (JER)
    (S.D.N.Y.) (filed Apr. 30, 2009)................................................................................14

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
    389 B.R. 325 (S.D.N.Y. 2008) ...............................................................................6

*In re Berry Estates, Inc.*, 812 F.2d 67 (2d Cir. 1987), *cert. denied* 108 S. Ct. 77 (1987)............21

*In re Cabrini Med. Ctr.*, 12-cv-06661 (SAS) (S.D.N.Y.) (filed Aug. 31, 2012) .........................14

*In re Chateaugay*, 880 F.2d 1509 (2d Cir. 1989)......................................................15, 16, 17, 19

*In re China Medical Technologies, Inc.*, Case No. 12-13736 (REG) (Bankr. S.D.N.Y.)...............2

*In re Colonial Realty*, 980 F.2d 125 (2d Cir. 1992).............................................................*passim*

*In re Cynthia Bell V.*, 1:96-cv-02865 (RWS) (S.D.N.Y.) (3.5 months)........................................14

*In re Dreier LLP*, 1:10-cv-05669 (DAB) (S.D.N.Y.) (filed July 26, 2010)....................................14

*In re Dreier LLP*, 429 B.R. 112 (Bankr. S.D.N.Y. 2010)........................................................9, 22

*In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002) ....................................................9, 22

*In re Enron Creditors Recovery Corp.*, No. 01-16034, 2009 WL 3349471
    (S.D.N.Y. Oct. 16, 2009)................................................................................20, 24

*In re Fairfield Sentry Ltd.*, No. 10 Civ. 7311(GBD), 2011 WL 4357421
    (S.D.N.Y. Sept. 16, 2011)................................................................................15

*In re Lehman Bros. Holdings, Inc.*, et al., 1:10-cv-04799 (RJH) (S.D.N.Y.)
   (filed Sept. 9, 2010) ......................................................................................... 14

*In re Lehman Brothers*, 697 F.3d 74 (2d Cir. 2012) ................................................ 16

*In re Muniz*, No. 98 Civ. 6085, 1999 WL 182588 (S.D.N.Y. Mar. 31, 1999) .............................. 17

*In re Quigley Co., Inc.*, No. M-47, 2010 WL 356653 (S.D.N.Y. Jan. 27, 2010) .............. 15, 16, 17

*In re Quigley*, 323 B.R. 70 (S.D.N.Y. 2005) ............................................................ 16

*In re Taddeo*, 685 F.2d 24 (2d Cir. 1982) ................................................................ 16

*Kamai v. Long Beach Mortgage Co., et al. (In re Kamai)*, BAP No. NV-04-1013
   (B.A.P. 9th Cir. 2004) (Sept. 30, 2004) .............................................................. 18

*Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994), *aff'd In re Snyder*,
   52 F.3d 1067 (5th Cir. 1995) ............................................................................. 22

*Sonnax Indus., Inc. v. TRI Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
   907 F.2d 1280 (2d Cir. 1990) ........................................................................ 15, 23

*Wills Motors, Inc. v. Volvo N. Am. Corp.*, 131 B.R. 263 (S.D.N.Y. 1991) .................................. 21

**Statutes**

11 U.S.C. § 1501(a) ........................................................................................... 6

11 U.S.C. § 1504 ................................................................................................ 6

11 U.S.C. § 1515 ................................................................................................ 6

11 U.S.C. § 1519 ................................................................................................ 6

11 U.S.C. § 1520(a)(1) ....................................................................................... 6

11 U.S.C. § 1520(a)(3) ....................................................................................... 6

11 U.S.C. § 1521(a) ........................................................................................... 6

11 U.S.C. § 1521(a)(4) ............................................................................. 1, 2, 8, 10

11 U.S.C. § 1521(b) ........................................................................................... 6

11 U.S.C. § 362 .................................................................................................. 6

11 U.S.C. § 362(a) ............................................................................................ 21

11 U.S.C. § 362(a)(1) ............................................................................. 3, 8, 21, 22

11 U.S.C. § 362(a)(3) ................................................................................. *passim*

28 U.S.C. § 1292(b) .......................................................................................... 19

28 U.S.C. § 158 (a)(1) ................................................................................... 4, 15

28 U.S.C. § 158(a) ........................................................................................... 15

28 U.S.C. § 158(a)(3) ................................................................................. *passim*

Fed. R. Bankr. P. 8001(a) ................................................................................ 15

Fed. R. Bankr. P. 2004 ..................................................................................................... passim

Fed. R. Bankr. P.  8001 ............................................................................................................. 1

Fed. R. Bankr. P.  8003 ............................................................................................................. 1

WB Family LLC ("WB Family") and Henry L. Mann ("Mann") (together, "Appellants"), respectively submit this memorandum of law in support of their motion, in the alternative, for leave to appeal, pursuant to 28 U.S.C. § 158(a)(3) and Federal Rules of Bankruptcy Procedure 8001 and 8003, from the Order of the Bankruptcy Court Denying Renewed Motion of WB Family LLC And Henry L. Mann For An Order Confirming That The Automatic Stay Does Not Apply Or, In The Alternative, Granting Stay Relief, which was entered in the above-captioned Chapter 15 proceeding on July 11, 2013 (Docket No. 122) (the "Order"). A true and correct copy of the Order is attached as Exhibit A to Appellants' Notice of Appeal and Motion for Leave to Appeal.

## PRELIMINARY STATEMENT

Appellants appeal or, alternatively, move for leave to appeal, from an Order of the Bankruptcy Court applying the automatic bankruptcy stay in a novel context that raises issues of first impression in this Circuit and, apparently, the nation. The Bankruptcy Court's Order permitted the Foreign Representative (analogous to a bankruptcy trustee) in this Chapter 15 proceeding to stay his *own* pending state court lawsuits (the "State Court Actions") against the debtor's alleged fraudulent transferees, solely because, as the Foreign Representative has openly admitted, he currently has insufficient evidence to support his claims in those lawsuits and wishes to forestall the defendants from seeking dismissal of those Actions while he takes discovery under the Fed. R. Bankr. P. 2004 ("Rule 2004") and its Chapter 15 counterpart, 11 U.S.C. § 1521(a)(4), in hopes of uncovering such evidence. Such Order is without precedent and impermissibly applies both (*a*) the automatic stay, which, under well-settled law, cannot be invoked against claims by the debtor, and (*b*) Rule 2004, which, under the well-settled "pending proceeding" rule, cannot be used to obtain discovery for use in a pending lawsuit:

No doubt the Bankruptcy Court would have agreed with these propositions had the State Court Actions been originally commenced by the Foreign Representative.  But the State Court Actions were originally commenced by certain of the debtor's institutional bondholders (the "Hedge Funds"), working closely in tandem with the Foreign Representative and represented by the same counsel.[1]  Over the Foreign Representative's and his conflicted counsel's vigorous opposition, the Bankruptcy Court ruled that the claims in the State Court Actions belonged to the Debtor's estate and that their prosecution by the Hedge Funds violated the automatic bankruptcy stay.  The Court required the Hedge Funds to assign their claims in the State Court Actions to the Foreign Representative, and directed his counsel to withdraw, as a condition of authorizing the Foreign Representative to obtain discovery under Rule 2004 and 11 U.S.C. §1521(a)(4).  The Hedge Funds immediately executed an irrevocable assignment that ceded sole control and authority over the State Court Actions to the Foreign Representative, and the Foreign Representative's counsel withdrew from representing him.  However, for the past six months, the Foreign Representative has strategically refused to enter or participate in the State Court Actions, contending that, despite their assignment to him, they remain subject to the automatic stay.

Once the State Court Actions were assigned to the Foreign Representative, the Appellants (defendants in those proceedings) moved the Bankruptcy Court for confirmation that the automatic stay no longer applied or, alternatively, for stay relief, on the basis that the automatic

---

[1] The Debtor's estate is virtually assetless (Docket No.13 ¶ 12), yet the Foreign Representative has steadfastly refused to disclose the source of funds for his own fees and his massively-expensive, global investigation of hundreds of financial institutions and, by now, likely millions of pages of records.  (Docket No. 4 ¶¶ 8, 12, 29, 19)  It appears likely that the Hedge Funds are funding the Foreign Representative's investigation, creating a highly-inappropriate appearance that the Foreign Representative is favoring certain of the Debtor's stakeholders to the substantial detriment of others.  (*See*, *e.g*., Docket No. 75 at 9-10 (Debtor's majority shareholders complain of Foreign Representative's "bias" toward the Hedge Funds)) (Citations to the "Docket" are to the docket of the Chapter 15 proceeding below, *In re China Medical Technologies, Inc.*, Case No. 12-13736 (REG) (Bankr. S.D.N.Y.).)

stay could not relieve the Foreign Representative from prosecuting his own claims and the defendants should have the right to defend themselves in the State Court Actions.  As the Appellants made clear, they did not seek to interfere with the Foreign Representative's right to commence his own claims at whatever time and in whatever forum he chose, but merely wished him to elect either to proceed with, or permit dismissal without prejudice of, the pending State Court Actions.  But the Bankruptcy Court, at the Foreign Representative's request, held that the Actions remained subject to the automatic stay and denied stay relief. The Court reasoned that requiring the Foreign Representative to choose whether to proceed with (what were now) his own pending lawsuits would constitute an impermissible exercise of control over the debtor's "property" in violation of 11 U.S.C. § 362(a)(3).[2]  The Court rejected Appellants' arguments that permitting the Foreign Representative to maintain the dormant State Court Actions as placeholders while he sought Rule 2004 discovery to support them would (*a*) confer on him an unprecedented advantage unavailable to other trustees, who must balance their need for Rule 2004 discovery against the imperative of commencing their own, timely actions, (*a*) inappropriately allow him to profit from his misconduct in assisting the Hedge Funds' automatic stay violation, and (*c*) prejudice the defendants by precluding them from defending themselves in those Actions.  The Court held that the Foreign Representative was entitled to a temporary "breathing spell" of at least four months so that he and his new counsel could "get up to speed" regarding the issues in the State Court Actions, despite the fact that the Foreign Representative's

---

[2] As described below, the Bankruptcy Court's premise that claims against alleged fraudulent transferees are "property" of the debtor under Section 362(a)(3) was explicitly rejected by the Second Circuit in *In re Colonial Realty*, 980 F.2d 125, 131-32 (2d Cir. 1992), which held that such claims are instead acts to "recover a claim against the debtor" under Section 362(a)(1). The Bankruptcy Court recognized *Colonial Realty*'s holding but rejected it as "counterintuitive to the views of those in the bankruptcy community who deal with issues of this character." (Docket No. 71 at 17)

former counsel had commenced and prosecuted the Actions with the Foreign Representative's active assistance.

The Court permitted Appellants to move for stay relief again after four months, which they did, but the Court, again at the Foreign Representative's request, denied the Appellant's renewed motion on the basis that the Foreign Representative had not made sufficient progress in his Rule 2004 discovery to support his claims in the State Court Actions.  The Court extended the Foreign Representative's "breathing spell" by yet another four months, despite finding expressly that Appellant Mann—a star senior associate and partnership candidate at an Am Law 200 firm—is suffering material reputational prejudice from being a defendant in a pending fraud action for which, as the Foreign Representative conceded on the record, there is still absolutely no supporting evidence or good faith basis to maintain.   Appellants appeal from the Court's Order denying their renewed motion.

The Bankruptcy Court's Order is a final order appealable as of right, pursuant to 28 U.S.C. § 158 (a)(1).  Courts in this Circuit and District have uniformly held that similar orders applying the automatic stay and denying stay relief are final, notwithstanding the bankruptcy courts' common invitation (which is available in any event if circumstances change) to reapply for stay relief after a prescribed time period.  The finality of the Order is even more plain in this context, since Appellants' sole interest, as defendants in the stayed State Court Actions, is not that the Actions proceed, but rather *if* they must proceed, they do so ***now*** on a level playing field, so that Appellants are not unfairly disadvantaged by being forced to sit idly while their adversary unilaterally conducts discovery *via* Rule 2004 rather than in the context of the State Court Actions.  Inevitably, of course, the Bankruptcy Court ***will*** lift the stay, likely at the Foreign Representative's request, but by then Foreign Representative's unfair advantage in the State

4

Court Actions will be irreparable, the relief Appellants seek will have been entirely mooted, and the Bankruptcy Court's Order permitting the Foreign Representative to invoke stay relief to postpone his own lawsuits will have been rendered unreviewable.

Should this Court determine that the Order is interlocutory, Appellants request that the Court grant leave to appeal pursuant to 28 U.S.C. § 158(a)(3).  The Bankruptcy Court's Order, if interlocutory, satisfies easily the factors governing the determination whether such orders are appealable.  The Bankruptcy Court's application of the stay is the ***only*** issue of law disputed by the parties in this proceeding, and is thus indisputably "controlling" of their dispute.  Perforce, an immediate appeal from the Order may materially advance the ultimate determination of the parties' dispute, since the sole disputed issue between them in this proceeding is whether the automatic stay applies and, if so, when (not whether) it will be lifted.  Finally, there is "substantial ground for a difference of opinion," since the Bankruptcy Court's Order is both unprecedented and contrary to well settled authority in this Circuit and District (*a*) precluding application of the stay to actions in which the debtor is the plaintiff, and (*b*) holding that fraudulent conveyance claims are not "property" of the debtor's estate.

For these reasons, the Court should hold that the Bankruptcy Court's Order is a final order appealable as of right, or, alternatively, an appealable interlocutory order.

## **FACTUAL AND PROCEDURAL BACKGROUND**

### ***The Chapter 15 Proceeding In The Bankruptcy Court***

The debtor, China Medical Technologies, Inc. (the "Debtor") is a Cayman Islands company with all its operations in China.  (*See* Docket No. 2 ¶¶ 4-5)  From 2005 through 2010, the Debtor issued a series of public equity and debt offerings in the United States yielding about $677 million.  (*See* Docket No. 19 ¶¶ 7-8)  The Debtor defaulted on its debt obligations in December 2011 and, in June 2012, was forced by its bondholders into involuntary insolvency

proceedings in the Cayman Islands (the "Cayman Insolvency Proceeding").  (*See* Docket No. 2 ¶¶ 19-20)  At the bondholders' request, the Cayman Islands court appointed two joint official liquidators, one of whom is Kenneth M. Krys (the "Foreign Representative").  (*See* Docket No. 26. ¶ 5; Attachment 3)

On August 31, 2012, the Foreign Representative commenced the instant proceedings under Chapter 15 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court").[3]  (*See* Docket Nos. 1, 2)  On October 11, 2012, the Court entered an order recognizing the Cayman Insolvency Proceeding as a foreign main proceeding under Chapter 15 ("Order of Recognition").  (*See* Docket No. 16)

### ***The Stayed State Court Lawsuits***

After forcing the Debtor into the Cayman Insolvency Proceeding, managers of hedge funds holding about 25% of the Debtor's bonds (the "Hedge Funds")[4] commenced fraudulent conveyance lawsuits in New York and California state courts against the Debtor's former chairman, his estranged family, family trusts and a closely-held family company (the "State

---

[3] Chapter 15 of the Bankruptcy Code was enacted to "provide effective mechanisms for dealing with cases of cross-border insolvency proceedings."  11 U.S.C. § 1501(a).  A Foreign Representative of a debtor in a foreign insolvency proceeding may commence a Chapter 15 proceeding by filing a petition in a United States bankruptcy court seeking "recognition" of the foreign proceeding, either as a "main" or "non main" proceeding.  *See* 11 U.S.C. §§ 1504, 1515, 1519; *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 330-32 (S.D.N.Y. 2008) (Sweet, J.).

Upon the bankruptcy court's order granting recognition of a foreign main proceeding, the automatic bankruptcy stay, 11 U.S.C. § 362, applies "with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States."  11 U.S.C. § 1520(a)(1).  Additionally, the Foreign Representative is vested with some, but not all, of the powers of a bankruptcy trustee.  *See e.g*., 11 U.S.C. §§ 1520(a)(3), 1521(a) & (b).

[4] The State Court defendants contend that these hedge fund managers lacked standing and thus were not proper plaintiffs in the state court actions.  Reference to the managers as "Hedge Funds" or "creditors" for ease of analysis is without prejudice to, or waiver of, the defendants' position that they lack standing.

Court Actions"). In these Actions, the Hedge Funds claimed conclusorily that the former chairman looted the Debtor and funneled its assets to his estranged family members. In neither Action did the Hedge Funds' complaint identify *any* specific transfer to the family members, either by date, type or amount, nor plead any facts that would render such transfers plausible.[5]

Appellant WB Family is a named defendant in the California Action, and Appellant Mann is a named defendant in the New York Action.

### *The Foreign Representative's Improper Collusion With The Hedge Funds*

As the Bankruptcy Court would later hold, the State Court Actions, which sought to recover assets allegedly belonging to the Debtor, asserted claims that belonged solely to the Debtor and, upon the Court's Order of Recognition, violated the automatic stay. *See* pp. 9-10, *infra*. The Foreign Representative had a fiduciary obligation to protect the interests of the entire Debtor's estate by enforcing the automatic stay against the creditors' competing lawsuits. (*See* Docket No. 71 at 75:14-23 ("[State Court Actions] were at least seemingly a plain conflict with the interests of the debtor")) Indeed, the Foreign Representative's first act upon commencing the Chapter 15 proceeding below was to enforce the stay against a pending shareholder lawsuit against the Debtor and its officers. (*See* Docket No. 2 ¶¶ 2, 18)

But far from seeking to enjoin the Hedge Funds' State Court Actions, the Foreign Representative actively encouraged and abetted the Hedge Funds' violation of the automatic stay—*because he was represented in these proceedings by the same law firm that was*

---

[5] The State Court Actions are captioned *GLG Partners LP v. Wu Xiaodong*, Case No. 30-2012-00583610 (the "California Action") (*see* Docket Nos. 27, Attachments 2-4 (California Complaint); and *GLG Partners LP, et al. v. Mann, et al.*, Index No. 155696/2012 (the "New York Action") (Docket No. 26, Attachment 6 (New York Complaint)). For an identification and description of the Hedge Fund plaintiffs, *see* Docket No. 25, at 7-8. For a description of the claims set forth in the State Court Complaints, *see* Docket No. 25 at 12-13.

***representing the Hedge Funds in the competing State Court Actions***:  Stroock & Strook & Lavan, LLP ("Stroock").  (*See* Docket No. 25 at 9-10)

### *The Foreign Representative's Rule 2004 Discovery In The Chapter 15 Proceeding*

On November 15, 2012, the Foreign Representative moved the Bankruptcy Court for an order authorizing discovery under 11 U.S.C. § 1521(a)(4) and Rule 2004.  The Foreign Representative sought discovery to support the same allegations made by the Hedge Funds in the State Court Actions, including discovery against one of the defendants in the California Action, several other persons and entities alleged to have information regarding her assets, and, later, another defendant in the California Action.  (*See* Docket Nos. 19, 79)

Dismayed at being targeted on two fronts, the State Court defendant from whom discovery was sought (Xiaoqiong Bi, or "Bi") opposed the Foreign Representative's motion. (*See* Docket No. 25)  Bi argued that the State Court Actions were barred by the automatic bankruptcy stay, in that the Hedge Funds' claim to recover the Debtor's allegedly-fraudulently-transferred assets was "properly regarded as undertaken 'to recover a claim against the debtor' and subject to the automatic stay pursuant to 362(a)(1)."  (*Id.* at 29 (quoting *In re Colonial Realty*, 980 F.2d 125, 131-32 (2d Cir. 1992) (creditor's claim against alleged fraudulent transferees of the debtor's assets constituted an action "to recover a claim against the debtor," because "[a]bsent a claim against the debtor, there is no independent basis for the action against the transferee." (internal citation omitted)))).[6]

---

[6] The Bankruptcy Court has repeatedly refused to follow the Second Circuit's holding in *Colonial Realty* that claims against alleged fraudulent transferees of a debtor's assets are acts to "recover a claim against the debtor" under Section 362(a)(1).  The Bankruptcy Court insists instead that such claims constitute acts to "exercise control over property of the estate" under Section 362(a)(3), a view analyzed at length and explicitly rejected in *Colonial Realty*.  (*See, e.g.*, Docket No. 71 at 17-18 (rejecting "***odd language in* Colonial Realty*, language which would be counter intuitive to the views of those in the bankruptcy community who deal with issues of this character. . . [T]he problem is a 362(a)(3) violation, not a 362(a)(1) . . . Now, I***

Bi also argued that the Foreign Representative's request for Rule 2004 discovery was barred by the well-settled "pending proceeding rule," which bars a trustee from obtaining Rule 2004 discovery for use in a pending lawsuit.  (*See* Docket No. 25 at 19-22 (citing, *inter alia*, *In re Enron Corp.*, 281 B.R. 836, 840, 842 (Bankr. S.D.N.Y. 2002) ("Courts have exhibited . . . concerns . . . when confronted with the propriety of Rule 2004 examinations where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee.")))  Bi argued that the Foreign Representative, having openly cooperated with the Hedge Funds and admitted his intent to "assist" them with discovery obtained through the Bankruptcy Court, was barred from obtaining Rule 2004 discovery under the pending proceeding rule.  *Id*.

The Bankruptcy Court agreed the Hedge Funds' claims in the State Court Actions properly belonged to the Debtor's estate, that the Hedge Funds' ongoing prosecution of such Actions would "obvious[ly]" violate the automatic stay, and that the Foreign Representative could not obtain Rule 2004 discovery in order to assist the Hedge Funds' lawsuits.  (Docket No. 71 at 70:14-16, 71:25-72:3, 72:17-18; 73:17-18)  The Court also found Stroock's simultaneous representation of the Hedge Funds and the Foreign Representative "objectionable," "very troubl[ing]," and, indeed, "unprecedented.  (Docket No. 71 at 12:24-13:5, 74:11-12, 76:14-23)  Although the Bankruptcy Court declined to exercise its inherent authority to enjoin the State Court Actions and disqualify Stroock, it conditioned approval of the Foreign Representative's request for discovery in the bankruptcy case on (*a*) the Hedge Funds' assignment of their claims

---

know that there's language in **Colonial Realty** *that can be read otherwise*." (emphasis added)); Docket No. 105 at 3, 25 (State Court Actions stayed under Section 362(a)(3)); Docket No. 119 at 38 (same); *but see Colonial Realty*, 980 F.2d at 131 (a debtor's fraudulently transferred "property is not to be considered property of the estate until it is recovered"); *accord In re Dreier LLP*, 429 B.R. 112, 132-33 (Bankr. S.D.N.Y. 2010) (Bernstein, J.) (debtor's "transferred property [does] not become property of the estate until it is recovered").

to the Foreign Representative, and (*b*) Stroock's withdrawal from representing the Hedge Funds. (*See* Docket No. 71 at 77-78)

### *The Hedge Funds' Assignment Of Their Claims To The Joint Liquidators, And Stroock's Withdrawal*

Pursuant to an Assignment Agreement dated January 16, 2013, the Hedge Funds irrevocably assigned their claims in the State Court Actions to the Foreign Representative and his joint official liquidator (together, the "Liquidators") and conferred sole discretion on the Liquidators regarding the prosecution, settlement or resolution of such Actions.  (*See* Docket No. 47 at 12-17 (Ex. A))

Stroock elected to withdraw from representing the Foreign Representative rather than the Hedge Funds, which the Bankruptcy Court agreed was an acceptable alternative.  (*See* Docket No. 59)  The Bankruptcy Court thereupon issued an order permitting the Foreign Representative to take discovery under Rule 2004 and Section 1521(a)(4).  (Docket No. 58)

### *The Foreign Representative's Unavailing Investigation*

The Foreign Representative is investigating the alleged disappearance of the $677 million raised through the Debtors' securities offerings.  (*See* Docket No. 19 ¶¶ 7-8)  Perhaps not surprisingly, given their formerly-shared counsel, the Foreign Representative's theories regarding the disappearance of those funds are strikingly similar to those asserted by the Hedge Funds in the State Court Actions—that the funds were looted by the former chairman and distributed to his (estranged) family.  (*See* Docket No. 25 at 12-16)

Yet after a massive global investigation of over 300 banks and financial institutions in the Cayman Islands, Hong Kong, United States, and People's Republic of China, yielding over what are now likely millions of pages of investigatory material, and aided by the Hong Kong police, United States Federal Bureau of Investigation, and the United States Securities and Exchange

Commission (*see* Docket No. 4 ¶¶ 8, 12, 29, 19), **the Foreign Representative has uncovered no evidence that the Debtors' funds were looted**.  Indeed, as recently as July 3, 2013, the Foreign Representative conceded:  "The information that has been provided to us by these parties, again we don't have anything at all, has not evidenced anything that has assisted us in indicating where money came from or where money went."  (Docket No. 119 at 27:14-18)  With respect to Appellant Mann, the Foreign Representative conceded: "We do not have **any information** that – **we don't have proof** that any of [CMED's] money went to [Appellant] Mr. Mann.  We just don't have it."  (*Id*. at 22:11-13 (emphasis added)). [7]

Moreover, despite having obtained the State Court defendants' bank records and other financial information, the Foreign Representative has identified only $26 million in intra-family transfers from 2005 through 2012 (an annual average of about $3.25 million)—a relatively insubstantial amount compared to the $677 million he claims is missing.  And even these intra-family transfers are hardly suspicious or even notable, given public filings documenting that the defendants earned at least $45 million from businesses unrelated to the Debtor.  (*See* Docket No. 43 at 7 ¶ 4, 5(b) & 43-2, 43-3-, 43-4)

### *The State Court Defendants Move For Confirmation That The Automatic Stay Does Not Apply Or, Alternatively, For Stay Relief*

Once the Hedge Funds assigned their claims to the Foreign Representative, there was no basis for staying the State Court Actions.  Yet, in a remarkable about-face, the Foreign Representative, who had vigorously opposed applying the stay against the **Hedge Funds**, now

---

[7] A far more plausible theory than corporate looting has been advanced by the Debtor's majority shareholders.  Backed by substantial evidence, the shareholders posit that all the funds from the Debtor's public offerings remain in its thriving operating subsidiaries in China, and that the Debtor's default on its U.S. debt obligations is merely an example of a well-known strategy by publicly-traded Chinese companies of pretending to go "dark" to defraud their U.S. investors.  (*See* Docket No. 75 at 3-5, 7-9)

11

sought, post-assignment, to apply the stay against ***himself***.  The Foreign Representative argued that the State Court Actions should be stayed indefinitely, preventing the defendants from protecting and asserting their rights, moving to dismiss, or taking their own discovery, so that the Foreign Representative could pursue wide-ranging Rule 2004 discovery in support of those Actions under the auspices of the Chapter 15 proceeding.

Appellants moved the Bankruptcy Court for confirmation that the automatic stay no longer applied to the State Court Actions or, alternatively, for stay relief.  (*See* Docket Nos. 54, 62, 66)  Appellants argued that (*a*) under well-settled law, the automatic stay does not apply to suits ***by*** the debtor; (*b*) Appellants were unfairly prejudiced by being precluded from defending themselves while the Foreign Representative obtained discovery under Rule 2004 for use in the State Court Actions, and (*c*) the Foreign Representative should not be permitted to profit from his cooperation in the Hedge Funds' violation of the automatic stay by maintaining the State Court Actions as "placeholders" while he pursues Rule 2004 discovery.

The Bankruptcy Court denied Appellants' motion, but without prejudice to renew it in four months (*i.e.*, on or after June 6, 2013).  (*See* Docket Nos. 105; 72)  The Court held that the Foreign Representative was entitled to a temporary "breathing spell" to permit him to substitute into the State Court Actions and permit his new counsel to "get up to speed on whether or not it wishes to pursue those claims and, if so, where."  (*See* Docket No. 105 at 18:14, 23:13-14)  The Court was particularly concerned that, if stay relief were granted, the Foreign Representative and his new counsel would be "helpless" to oppose the California defendants' pending demurrer (*i.e.*, a motion to dismiss directed at the adequacy of the Hedge Funds' complaint).  The Court viewed the State Court defendants' desire to proceed with the State Court Actions as a "classic 362(a)(3) violation" (directly contrary to *Colonial Realty*, 980 F.2d at 131), in that the defendants were

attempting to exercise control over property of the estate.  (*See* Docket No. 105 at 3)  Appellants did not appeal the Court's ruling, believing that, since four months was ample time for the Foreign Representative's new counsel to "get up to speed" sufficiently to oppose the California defendants' demurrer, the Court would lift the stay at the end of the four-month period.

### *The State Court Defendants Renew Their Motion*

As permitted by the Bankruptcy Court, in June 2013, Appellants filed a renewed motion for confirmation that the automatic stay no longer applied to the State Court Actions or, alternatively, for stay relief.  (*See* Docket Nos. 107, 112, 114)  Appellants argued that the Foreign Representative and his counsel had been accorded ample time to inform themselves regarding the merits of the State Court Actions.  (*See* Docket No. 107 ¶¶ 24-25) Appellants also presented undisputed evidence of ongoing reputational harm to Appellant Mann, a senior associate and strong potential partnership candidate at an Am-Law 200 firm, from his status as a named defendant in a pending fraud action with no ability to challenge the sufficiency of the claims against him, even though, as the Foreign Representative conceded, there was absolutely no evidence that he had ever had any involvement in the Debtor's affairs or received any of its assets.  (*See id*. 13-15)[8]

The Foreign Representative opposed Appellants' renewed motion, claiming still to be unprepared to proceed against the State Court defendants.  (*See* Docket No. 119 at 18:20-24

---

[8] As set forth in Appellants' renewed motion, Appellant Mann continues to suffer substantial, unfair reputational damage as a result of the New York Action.  Mann is an accomplished, partnership-track senior corporate associate at the AmLaw 200 Firm of Schiff Hardin LLP.  (*See* Docket No. 108 ¶ 2)  He has no relationship with the Debtor apart from being married to Junyun Bi, the long-estranged stepdaughter of the Debtor's former chairman.  (*See* Docket No. 30 ¶¶ 4-8)  He has never received anything of value from the Debtor or its chairman, except for a wedding present of a watch.  (*See id*. ¶¶ 5, 7)  None of the Foreign Representative's voluminous papers filed in this Court has provided any basis for his claim that Mann received funds belonging to the Debtor.  The Foreign Representative has never even sought any discovery from Mann.

("[W]e're not ready to proceed with any causes of action against any parties . . . we're still in the early stages of this investigation."))

## THE BANKRUPTCY COURT'S DECISION AND ORDER

The Bankruptcy Court again denied Appellants' motion, holding that no changed facts had occurred to warrant reconsideration of its earlier decision that the automatic stay applied to the State Court Actions, and that "cause has not yet been shown for relief from the stay." (Docket No. 119 at 38:6-7)  The Court held (again contrary to *Colonial Realty*) that the "potential litigation rights" in the State Court Actions were property of the Debtor's estate, and that "anything that prejudices the Foreign Representative with respect to jeopardizing their rights, if any, raises 362(a)(3) implications."  (*Id*. at 38)  While the Court expressly found that "Mann is being prejudiced" by the pendency of the lawsuit against him (*id*. at 43), and did not identify any actual prejudice to the Foreign Representative, the Court nevertheless held that the "balance of prejudice" weighed in favor of the Foreign Representative and accorded him four ***more*** months to pursue his investigation, permitting Appellants, once again, to renew their motion after that period expired.  (*Id*. 107 at 38; Docket No. 122)[9]

## QUESTIONS PRESENTED AND RELIEF SOUGHT

---

[9] The Bankruptcy Court also refused to make its its Order clearly appealable due to its view that "[t]here are very few District Judges of whom I am aware who could get themselves up to speed on this issue, get it briefed and decided in the next four months, and it wouldn't be a good use of any of their time, even if they wanted to."  (Docket No. 119 at 45:6-8)  *But see, e.g., In re Cabrini Med. Ctr*., 12-cv-06661 (SAS) (S.D.N.Y.) (filed Aug. 31, 2012) (adjudicating appeal from stay relief decision in 3.5 months); *In re Lehman Bros. Holdings, Inc*., et al., 1:10-cv-04799 (RJH) (S.D.N.Y.) (filed Sept. 9, 2010) (2.5 months); *In re Dreier LLP*, 1:10-cv-05669 (DAB) (S.D.N.Y.) (filed July 26, 2010) (1.5 months*); In re Bally Total Fitness of Greater New York, Inc.*, 1:09-cv-04250 (JER) (S.D.N.Y.) (filed Apr. 30, 2009) (3.5 months); *In re Cynthia Bell V*., 1:96-cv-02865 (RWS) (S.D.N.Y.) (3.5 months); *Bleeker St. Owners, et al. v. 160 Bleeker Assoc., et al*., 93-cv-01033 (PNL) (S.D.N.Y.) (filed Feb. 23, 1993) (3.75 months).

Appellants appeal from the Bankruptcy Court's Order denying their renewed motion, and raise the following issues on appeal:

1.  Did the Bankruptcy Court err in holding that the bankruptcy stay applied to the State Court Actions, rejecting controlling precedent that the automatic stay does not apply to actions in which the debtor is the plaintiff and the defendants have asserted no counterclaims?

2.  Did the Bankruptcy Court err in holding that forcing the Foreign Representative to proceed in the State Court Actions would constitute an exercise of control over the Debtor's property, in violation of Section 362(a)(3), thereby rejecting controlling precedent that fraudulent conveyance claims do not constitute "property" of the debtor?

3.  Alternatively, did the bankruptcy court err by denying Appellants' request for stay relief, because the test set forth by the Second Circuit in *Sonnax Indus., Inc. v. TRI Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990), tips decidedly in favor of stay relief?

Appellants request that the Bankruptcy Court's Order be reversed with instructions to enter an order confirming that the automatic stay does not apply to the State Court Actions or, in the alternative, lifting the stay to permit the State Court Actions to proceed.

## REASONS WHY THE APPEAL SHOULD BE GRANTED

District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a) ("Section 158(a)").  *See In re AroChem Corp.*, 176 F.3d 610, 618 (2d Cir. 1999).  A final order from the bankruptcy court is appealable as of right, pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001(a).  *See In re Quigley Co., Inc.*, No. M-47, 2010 WL 356653, at *3 (S.D.N.Y. Jan. 27, 2010) ("*Quigley II*").  Alternatively, an interlocutory order from the bankruptcy court is appealable on leave of court, which is discretionary pursuant to 28 U.S.C. § 158(a)(3).  *See In re Chateaugay*, 880 F.2d 1509, 1511 (2d Cir. 1989).  Section 158(a) applies equally to bankruptcy court rulings in proceedings under Chapter 15 of the Bankruptcy Code.  *See In re Fairfield Sentry Ltd.*, No. 10 Civ. 7311(GBD), 2011 WL 4357421 *3 (S.D.N.Y. Sept. 16, 2011); *In re Bear Stearns*, 389 B.R. at 333.

15

I.   **THE ORDER IS A FINAL ORDER APPEALABLE AS OF RIGHT**

The Bankruptcy Court's Order is final and appealable as of right, under the flexible standard of finality that applies in bankruptcy cases.  "[I]n the bankruptcy context, the standard for finality is more flexible than in other civil litigation. . . . [F]inality is viewed functionally, focusing on pragmatic considerations rather than on technicalities.  A finality determination in a bankruptcy appeal involves consideration of such factors as the impact of the matter on the assets of the bankruptcy estate, the preclusive effect of a decision on the merits, and whether the interests of judicial economy will be furthered."  *In re Lehman Brothers*, 697 F.3d 74, 77 (2d Cir. 2012) (internal citations and quotation marks omitted)).  "For a bankruptcy court order to be considered final, it need not resolve all of the issues raised by the bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief."  *Quigley II*, 2010 WL 356653, at *3 (internal quotations and citation omitted).

Here, pragmatic considerations weigh heavily toward finality, for the following reasons.

A.   **Orders Applying the Automatic Stay
And Denying Stay Relief Are Generally Final**

Bankruptcy court decisions applying the automatic stay to particular proceedings (as opposed to broad classes of claims) are generally considered final.  "[A]s a practical matter, [such orders] finally resolve[] a discrete dispute."  *Quigley II*, 2010 WL 356653 at *4 & n.3;[10] *see also In re Taddeo*, 685 F.2d 24, 26 n. 4 (2d Cir. 1982) ("Congress manifestly intended to treat final denial of relief from the automatic stay as a final order."); *Chateaugay*, 880 F.2d at

---

[10] In *Quigley II*, the Court distinguished its prior holding that the bankruptcy court's decision applying the automatic stay to a broad class of claims was interlocutory, because that prior decision did "not conclusively determine whether any ***individual*** action should be stayed" and explicitly permitted individual parties within the affected class to seek stay relief.  *See In re Quigley*, 323 B.R. 70, 73-74 (S.D.N.Y. 2005) ("*Quigley I*") (emphasis added); *Quigley II*, 2010 WL 356653 at *4 n.3.

1512; *In re Muniz*, No. 98 Civ. 6085, 1999 WL 182588, at *5 (S.D.N.Y. Mar. 31, 1999)

(bankruptcy court abused its discretion in refusing to lift the automatic stay).

> **B.      The Bankruptcy Court Dispositively**
> **Rejected Appellants' Legal Arguments**

The Bankruptcy Court's Order conclusively rejected each of the Appellants' legal

arguments that the automatic stay does not apply to the State Court Actions.  The Court rejected,

making clear it did not plan to revisit, Appellants' arguments that (*a*) the automatic stay cannot

apply to the State Court Actions because, in light of their assignment to the Foreign

Representative, they constitute actions by the Debtor; (*b*) the automatic stay cannot apply

because the claims in the State Court Actions do not constitute "property of the Debtor;" and (*c*)

the Foreign Representative's Rule 2004 discovery for use in the State Court Actions violates the

pending proceeding rule.

Having rejected the Appellants' legal arguments, the Bankruptcy Court's granting of

leave to renew their motion for stay relief in four months, to the extent such relief is warranted

by changed circumstances regarding the progress of the Foreign Representative's investigation

and further prejudice to the Appellants, does not render its Order non-final.  The Second Circuit

disposed of this precise issue in *Chateaugay*, holding that the bankruptcy court's intention to

revisit its denial of stay relief in one year was effectively a permanent injunction against

prosecuting the stayed action for ***at least*** one year, and thus a final appealable order.  880 F.2d at

1513.  The Court further explained:  "Reconsideration of the issue in one year is actually

consideration of a new motion, which will be decided in light of different circumstances, and the

consequences for the parties may be completely different at that time than they would have been

had relief been granted at the time the original motion was made."  *Id*.; *see also Quigley II*, WL

356653 at *4 (reaffirming *Chateaugay*'s holding that "an otherwise final order denying relief

from a stay was not found to be interlocutory simply because the appellant remained free to make a new motion for relief from the stay at a future date if their circumstances suggested that relief from the stay would be appropriate").

Bankruptcy Courts commonly deny motions for stay relief only temporarily, with express leave to renew at a later date or upon the occurrence of particular events, but so long as such orders resolve all *current* issues material to stay relief, they are final and appealable.  *See*, *e.g.*, *Banc of America Comm. Financial Corp. v. CGE Shattuck, LLC (In re CGE Shattuck, LLC)*, 225 B.R. 334 (B.A.P. 1st Cir. 2000) (order denying stay relief on the condition that debtor make adequate protection payments, and without prejudice to creditor's ability to seek stay relief in the future, was "final order" because the adequacy of protection payments "is predicated on the circumstances before the Court.  If those circumstances should change, those changed circumstances provide a new independent ground for relief from the stay, not a continuation of the earlier dispute."); *Kamai v. Long Beach Mortgage Co., et al. (In re Kamai)*, BAP No. NV-04-1013 (B.A.P. 9th Cir. 2004) (Sept. 30, 2004) (same).; *Aetna Life Ins. Co. v. Leimer, (In re Leimer)*, 724 F.2d 744 (8th Cir. 1984) (appeal from bankruptcy court order was final because in denying stay relief, the court conclusively established that the creditor was not the owner of property which it claimed adversely to the debtor's estate).

### C.    Absent Immediate Appeal, The Relief Sought By Appellants Will Be Rendered Moot

In contrast to most requests for stay relief, the Appellants' *sole* interest is in immediate stay relief.  Obviously the stay will be lifted once the Foreign Representative's Rule 2004 discovery is complete—he will likely himself request that the stay be lifted at that point—but by then, the relief sought by Appellants will be moot, and the Bankruptcy Court's unprecedented application of the stay, permitting the Foreign Representative to delay strategically his own

pending lawsuits in order to complete Rule 2004 discovery, will have been rendered unreviewable.  As the Second Circuit held in *Chateaugay*, 880 F.2d at 1513:  "Because the automatic stay will necessarily be lifted at some time, the sole issue in a motion for relief from the automatic stay is temporal.  If the stay is lifted only at the time of confirmation of the plan, an appeal from a denial of relief such as this becomes moot. The possibility of mootness further supports appellants' argument that the denial should be immediately appealable."

## II.   IN THE ALTERNATIVE, THE ORDER IS AN APPEALABLE INTERLOCUTORY ORDER

If the Court determines the Order to be interlocutory, it should grant Appellants leave to appeal under Section 158(a)(3).  Although Section 158(a)(3) does not provide a standard for granting leave to appeal, courts generally apply the standard for interlocutory review of District Court orders set forth in 28 U.S.C. § 1292(b).  *See Adelphia Recovery Trust v. Bank of America, N.A.*, 2007 WL 2585065, at *1 (S.D.N.Y. Sept. 5, 2007).  Section 1292(b) provides that interlocutory review is appropriate if (1) the "order involves a controlling question of law," (2) "there is a substantial ground for difference of opinion" on the issue to be presented on appeal, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Satisfaction of these requirements usually constitutes "exceptional circumstances" justifying leave to appeal.[11]

---

[11] Certain courts appear to view "exceptional circumstances" as an additional requirement that must be met, while others use it merely as a descriptive term applied to cases that meet the requirements of Section 1292(b), and still others do not cite it at all.  *Compare*, *e.g.*, *Adelphia*, which does not mention any "exceptional circumstances" requirement, with *Enron Corp v. Springfield Assocs., LLC (In re Enron Corp.)*, M-47, 2006 WL 2548592 at *3 (S.D.N.Y Sept. 5, 2006), which appears to treat "exceptional circumstances" as a separate requirement.  However, we are aware of no instance in which a court has found that all three Section 1292(b) factors were met but declined leave to appeal based on the absence of exceptional circumstances.  In any event, the circumstances presented here truly are exceptional.

A "question of law" is one that the reviewing court can decide "quickly and cleanly without having to study the record." *In re Enron Corp.*, 2006 WL 2548592 at *4 (citations omitted). A question is "controlling" for purposes of an interlocutory appeal if its determination "would terminate the action, or . . . would materially affect the litigation's outcome." *Id.* Substantial grounds for difference of opinion "must arise out of a genuine doubt as to whether the Bankruptcy Court applied the correct legal standard" and "may be met when there is conflicting authority on the issue or the issue is difficult and of first impression in this Circuit." *Id.* Indeed, "[w]hen a controlling question of law presents an issue of first impression, permission to appeal is often granted." *In re Enron Creditors Recovery Corp.*, No. 01-16034, 2009 WL 3349471, at *6 (S.D.N.Y. Oct. 16, 2009). Appellate review will materially advance the termination of this litigation if it "promises to advance the time for trial or shorten the time required for trial" or "substantially reduce[s] the amount of litigation left in the case." *Boles v. Merck & Co. (In re Fosamax Prods. Liab. Litig.)*, No. 06-1789 (JFK), 2011 WL 2566074 at *5 (S.D.N.Y. June 29, 2011) (citations omitted).

Each of these requirements is easily met in this case, for the following reasons.

## A. The Bankruptcy Court's Order Presents A Controlling Question Of Law

### 1. The Applicability Of The Automatic Stay To The State Court Actions Is A Pure Question Of Law

The applicability of the automatic stay to the State Court Actions is a pure question of law that the Court can decide quickly and cleanly, without the necessity of resolving disputed factual findings, based on *any* of the followed well-settled principles:

#### a. The Automatic Stay Simply Does Not Apply To Actions By The Debtor

The automatic stay does not permit a debtor, trustee, or foreign representative to obtain a strategic delay of an action in which it is the plaintiff. *See e.g., In re Berry Estates, Inc.*, 812

F.2d 67, 71 (2d Cir. 1987), *cert. denied* 108 S. Ct. 77 (1987) ("The State court actions were brought by [debtor] and were not subject to . . . an automatic stay[.]"); *Wills Motors, Inc. v. Volvo N. Am. Corp.*, 131 B.R. 263, 266-67 (S.D.N.Y. 1991) ("Initially it should be noted that the automatic stay does not apply in this case because 11 U.S.C. § 362(a) enjoins the commencement or continuation of all litigation ***against*** a debtor based on prepetition claims.  In the instant case the action was brought by the debtor as the plaintiff against the defendant[.]" (emphasis added)).

Here, of course, the Foreign Representative is not yet the plaintiff of record in the State Court Actions, but only because he has decided for strategic reasons to delay his exercise of the rights assigned to him by the Hedge Funds.  He is indisputably the sole holder of the claims in the State Court Actions and the only person, if any, who is empowered to assert those claims. (Docket No. 47 & Exhibit B)  The Court need not decide now whether, as Appellants contend, permitting the Foreign Representative to invoke the automatic stay based on his strategic delay in exercising his rights as plaintiff would exalt form over substance; the Court need only recognize, as is clear, that the resolution of that question is a pure issue of law that does not require the resolution of any disputed factual issue.

> ### b.     Section 362(A)(3) Cannot Apply, Because The Fraudulent Transfer Claims In The State Court Actions Are Not "Property" Of The Debtor

The Bankruptcy Court erred in applying the automatic stay provision of Section 362(a)(3), rather than Section 362(a)(1), to the State Court Actions.  (*See* Docket No. 105 at 25:3-6) Because the Court incorrectly viewed the fraudulent conveyance claims in the State Court Actions as "property" of the Debtor under Section 362(a)(3), it erroneously held that Appellants' efforts to defend their interests in those Actions constituted an impermissible exercise of control over the Foreign Representative's "potential litigation rights."  (*See* Docket No. 119 at 38:19-24 ("What we have here, in substance, is a basket full of potential litigation rights that may or may

not have merit. . . . anything that prejudices the Foreign Representatives with respect to jeopardizing their rights, if any, raises 362(a)(3) implications.")) But the Second Circuit has expressly held that claims against alleged fraudulent transferees of a debtor's assets are not property of the estate under Section 362(a)(3), but instead are properly viewed as claims against the debtor, since such claims are conditioned upon a valid claim against the debtor. *See Colonial Realty*, 980 F.2d at 131-132 (claims against alleged fraudulent transferees were actions "to recover a claim against the debtor and subject to the automatic stay pursuant to 362(a)(1)" . . . and "***not*** an 'act to obtain possession of property of the estate'" (emphasis added)); *accord In re Dreier LLP*, 429 B.R. at 132-33 (debtor's "transferred property [does] not become property of the estate until it is recovered").

As the Bankruptcy Court implicitly recognized, there is no coherent argument for application of the stay under Section 362(a)(1); *i.e.*, there is no sense in which Appellants' efforts as defendants to defend claims pending against them constitute acts to "recover a claim against the debtor." *See* Docket No. 119 at 38-39 (distinguishing as inapplicable cases decided under Section 362(a)(1)).

> **c.** ***The Foreign Representative's Rule 2004 Discovery For Use In The State Court Actions Violates The Pending Proceeding Rule***

The Foreign Representative's pursuit of Rule 2004 discovery for eventual use in the State Court Actions effectively violates the pending proceeding rule, which prohibits a trustee or foreign representative from obtaining Rule 2004 discovery for use in a pending proceeding. *In re Enron Corp.*, 281 B.R. at 840, 842. The Rule applies no less to pending state court litigation. *Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994) (use of Rule 2004 to further a state court action as an abuse of Rule 2004), *aff'd In re Snyder*, 52 F.3d 1067 (5th Cir. 1995). The Foreign Representative should be required now to decide whether to take over the State Court Actions

based on the current record, or dismiss those Actions and file new actions if and when his investigation provides a basis for doing so.

### d.     The "Prejudice" To The Foreign Representative On Which The Court's Order Was Based Is Not Legally Cognizable

The Court also erred as a pure matter of law in basing its denial of stay relief on legally-uncognizable "prejudice" to the Foreign Representative.  The Bankruptcy Court's analysis of the *Sonnax* factors focused entirely on the balance of prejudice, which the Court concluded favored the Foreign Representative.

But the Court did not identify any cognizable prejudice to the Foreign Representative from stay relief.  The Bankruptcy Court incorrectly viewed Appellants' motion as an effort to force the Foreign Representative into litigation at a time and in a place not of his own choosing (as if, for example, Appellants had brought a declaratory judgment of non-liability against him in their preferred forum).  ***The relief Appellants seek has no impact on the Foreign Representative's rights to bring his own claims within the applicable limitations period in any forum with appropriate jurisdiction***.  Instead, Appellants are simply trying to ameliorate the unprecedented, unfair advantage the Foreign Representative has by virtue of the Hedge Funds' violation of the automatic stay, in which the Foreign Representative has admittedly cooperated.  *See, e.g*., Docket No. 34 ¶ 35.  But for that violation, the State Court Actions would not exist, and the Foreign Representative, like any trustee, would have to balance his need for Rule 2004 discovery against the imperative of commencing timely claims.  The Foreign Representative should not be permitted to maintain these tainted Actions as a placeholder to be revived whenever he completes his Rule 2004 discovery.  If the Foreign Representative is unprepared or unwilling to take over the State Court Actions now, he can dismiss them without prejudice to his right to file his own claims.  There is simply no cognizable prejudice to the Foreign

Representative in being placed on exactly the same footing as a bankruptcy trustee who has not acquiesced and facilitated a creditor's violation of the automatic stay.

By contrast, as the Bankruptcy Court expressly found, Mann is prejudiced by being forced to remain a defendant in a baseless fraud suit that has been pending now for nearly a year with no ability to contest the sufficiency of the claims against him.  (*See* Docket No. 119 at 43)  Given the Bankruptcy Court's express finding of prejudice to Mann, and the absence of any articulable prejudice to the Foreign Representative, the Court's denial of stay relief constituted pure legal error.

2.     The Applicability Of The Automatic Stay
To The State Court Actions Is Controlling

Plainly, the Bankruptcy Court's Order is "controlling," because the applicability of the automatic stay is the ***only*** issue in dispute between Appellants and the Foreign Representative in these Chapter 15 proceedings.  A ruling in favor of Appellants will immediately terminate that dispute.

**B.     The Bankruptcy Court's Order Presents
Substantial Grounds For Difference Of Opinion**

The Bankruptcy Court's Order easily presents substantial grounds for difference of opinion.  Indeed, it is difficult to imagine more substantial grounds than when a lower court expressly declines to follow controlling authority as "counterintuitive."  (*See* Docket No. 71 at 16:6-8; Docket No. 119 at 38:19-24)  Moreover, the unprecedented nature of the Court's application of the stay to bar the prosecution of lawsuits in which the debtor is the de facto ***plaintiff*** raises substantial grounds *per se*.  *In re Enron Creditors Recovery Corp.*, 2009 WL 3349471, at *6 ("When a controlling question of law presents an issue of first impression, permission to appeal is often granted.").

**C.      Review Of The Bankruptcy Court's Order Will**
**<u>Materially Advance The Ultimate Termination Of This Dispute</u>**

Appellate review will materially advance the termination of the dispute between the

parties in this proceeding, because a ruling in Appellants' favor will dispose entirely of their

interest in these proceedings.  *See Fosamax*, 2011 WL 2566074, at *5.

<u>CONCLUSION</u>

For the reasons set forth above, the Court should permit Appellants to appeal the

Bankruptcy Court's Order holding that the automatic stay applies to the State Court Actions and

denying stay relief permitting such Actions to proceeding, either as a final order or an appealable

interlocutory order.

Dated:  New York, New York                                Respectfully submitted,
       July 25, 2013

                                     OBERDIER RESSMEYER LLP

                                     By:<u>   /s/ Carl W. Oberdier  </u>
                                         Carl W. Oberdier
                                         Kellen G. Ressmeyer
                                   655 Third Avenue, 28th Floor
                                   New York, New York 10017
                                   (212) 659-5141

                                   *Counsel for Appellants Henry L. Mann*
                                   *and WB Family, LLC*